IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| REBECCA CARTER | § |
| | § |
| Plaintiff(s), | § |
| | § |
| v. | § Case No. 3:22-00160-MOC-DSC |
| | § |
| DARE FOODS INCORPORATED | § |
| | § |
| Defendant(s). | § |

## AMENDED COMPLAINT

COMES NOW, the Plaintiff, Rebecca Carter (Carter), by and through the undersigned counsel of record, complaining of the acts of Defendant Dare Foods Incorporated (Dare), alleges and states as follows:

## NATURE OF THE CASE

1. This is a civil action is brought by Plaintiff Rebecca Carter for unlawful violations of the American's with Disabilities Act (ADA), the Family Medical Leave Act (FMLA), the Families First Coronavirus Response Act ("FFRCA"), and the Fair Labor Standards Act ("FLSA").

2. In April 2020, Rebecca Carter, a former employee of Dare Foods Incorporated, contracted the novel coronavirus SARS-CoV-2 (Covid-19) and her response to the virus was severe. Among other this, the Covid-19 virus

3. Following her exposure to the virus Carter requested that Dare provide her with reasonable accommodations so that she could return to work. It proposed three plans, but neither of these plans made an attempt to reasonably accommodate her medical needs and condition.

4. Dare also failed to notify Carter of her right to seek FMLA leave and when Carter requested said leave, Dare denied her any opportunity to apply.

5. Finally, although Carter was paid as a salaried and exempt employee, Dare withheld payment for those days that she was unable to provide at least eight hours of service.

6. As further detailed herein, Carter was discriminated against based on her disability, was unlawfully denied FMLA leave, and was misclassified as an FLSA exempt employee.

## PARTIES

7. Plaintiff Rebecca Carter ("Carter") is a citizen and resident of the state of North Carolina residing in Cabarrus County, North Carolina.

8. Upon information and belief, Defendant Dare Foods Incorporated ("Dare" or "the company") is a Corporation formed and existing under the laws of the state of South Carolina with its primary place of business located in Cambridge, Canada. Upon information and belief, Dare is and, at all material times, has been authorized to conduct business in the State of North Carolina and maintains offices in Mecklenburg County, North Carolina.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, and 42 U.S.C. § 2000e-5(f).

10. Venue is proper in this jurisdiction pursuant to 42 U.S.C. § 2000e-5(f)(3) and under 28 U.S.C. § 1391(b) because Defendant conducts business in this district and the unlawful conduct occurred here.

## ADMINISTRATIVE PROCEDURES

11. On or about January 15, 2021, Plaintiff filed a charge of discrimination with the United States Equal Opportunity Commission ("EEOC"), alleging violations of ADA.

12. On or about January 13, 2021, after more than 180 days had elapsed, the EEOC issued Plaintiff a Dismissal and Notice of Rights.

13. Any and all other prerequisites to the filing of this lawsuit have been met.

## FACTUAL ALLEGATIONS

14. Carter began her employment with Dare in or around May 2019 as a Senior Human Resources Generalist (HR Generalist) at a company facility in Cabarrus County, North Carolina.

15. As a Senior HR Generalist, Carter was responsible for, among other things: taking and investigating employee complaints; certain aspects of employee training; and helping the company to comply with employment laws and regulations.

16. In or around April 2020, Carter began experiencing symptoms associated with the novel coronavirus, SARS-CoV-2 ("Covid-19") and became extremely ill.

17. Although Covid-19 testing was not readily available at this time, Carter quarantined for two weeks in accordance with relevant state and federal guidelines. During this two-week period, Carter continued to work from home as she was able and her condition allowed.

18. On or about July 7, 2020, Carter became sick again and was again advised by her healthcare provider to self-quarantine due to her symptoms, condition, and the Covid-19 pandemic. Shortly thereafter, on or about July 17, 2020, Carter tested positive for the Covid-19 virus.

19. Due to the severity of her Covid-19 symptoms, Carter was wholly unable to return to work until on or around August 1, 2020. However, at that time, she continued to struggle with

the ongoing affects and symptoms of the virus such as extreme fatigue, shortness of breath, and confusion.

20. However, within only a few days after returning to work in August 2020, Carter found that her continuing Covid-19 symptoms made it extremely difficult to perform her job duties. While working at the Dare facility she routinely experienced, among other things: shortness of breath; severe exhaustion; fluctuating heart rate; muscle and body aches; dizziness; and loss of memory or confusion. These symptoms would come and go without notice or warning throughout the day.

21. Upon realizing the difficulties of working at Dare's facility with her condition, on or about August 14, 2021, Carter notified the company and requested that Dare allow her to take intermittent leave in accordance with the rights and procedures afforded by the FMLA. Her request was summarily denied by Dare's Human Resources Manager, Kelly Kreutzweiser ("Kreutzweiser") on the very same day.

22. In responding to Carter's request, Kreutzweiser stated that Dare was not required to provide its employees with FMLA leave and that Carter was not entitled to the statutory protections of the Act.

23. Despite Kreutzweiser's refusal to notify Carter of her FMLA rights or allow her to apply for intermittent leave, Dare is an employer as defined in 29 U.S.C. § 2611.

24. Upon information and belief, Dare is engaged in activity affecting commerce and, at all times material to the matters set forth herein, employed no less than fifty (50) employees within a 75-mile radius of the facility where Plaintiff worked.

25. Due to the disabling nature of her condition, on or about August 14, 2020, Carter also requested that Dare make accommodations for her disabilities based on the recommendations

4

Case 3:22-cv-00160-MOC-DSC    Document 4    Filed 08/02/22    Page 4 of 12

and advice given to her by her medical provider. Generally, Carter requested that Dare reasonably accommodate her disability by allowing her to work from home as necessary and providing additional breaks during the day as needed.

26. As an HR generalist, nothing in Carter's job description necessitated her attendance in the office or precluded her from working remotely on a day-to-day basis.

27. In response to Carter's request, Dare management came up with three different potential employment plans that it, in its sole opinion and without medical review, decided should be sufficient to accommodate her disabilities. None of these plans allowed for any flexibility that would allow breaks or leave as needed, none of the plans reasonably addressed Carter's condition, and none of these proposed plans were a reasonable accommodation.

28. Without knowing how each of Dare's proposed plans would affect her condition, Carter, asked if she could try each plan but Dare denied her request.

29. Instead, Dare forced Carter to pick one of the three proposed "accommodation" plans and informed her that her choice would be final and not subject to further review or modification regardless of her condition or medical needs.

30. Due to the intermittent nature of her condition, Carter requested that Dare provide a more flexible plan that would allow her to work remotely during those times when she was not well to come to the office. Dare decline to even consider any such arrangement.

31. Each of the three plans proposed by Dare, failed to consider Carter's medical needs or provide a reasonable accommodation for Carter's disabilities.

32. After Carter was forced to select one Dare's three proposed plans, she quickly began to realize that it was not going to work with her condition and medical diagnosis as she had little control over the ongoing effects of the Covid-19 virus on her body.

33. Dare's proposed plans also dictated when Carter would have to be present at the facility and when she would be permitted to take breaks without consideration for the nature of her condition or her then current health status.

34. Upon information and belief, Dare never intended to provide any reasonable accommodation for Carter's disabling condition, and it willfully and intentionally created proposed return to work plans that would not accommodate her needs.

35. Upon information and believe, Dare's proposed return to work plans were intended and designed to force Carter to resign due to her health conditions.

36. Due to Carter's continuing health issues, she was forced to take unpaid leave beginning on or about September 22, 2020. She was later released to go back to work by her doctor on or about December 1, 2020.

37. Despite her doctor's release to return to work, Dare informed Carter that she could only return to work if no restrictions or accommodations would be necessary.

38. Due to Dare's continuous refusal to provide any reasonable accommodation for Carter, she was finally forced to tender her resignation of employment out of concern for her own health and safety. Accordingly, Carter was constructively discharged from her employment with Dare on or about December 6, 2020.

39. Between April and December 2020, Carter did receive some compensation from Dare, but also had to use all her accrued "paid time off" in order to recover from Covid-19 and protect her position.

40. Dare never informed Carter of the opportunity to take FMLA leave and when Carter requested the same, her request was denied.

41. During her employment with Dare, Carter was compensated on a salary basis and treated as an "exempt" employee in accordance with the Fair Labor Standards Act ("FLSA").

42. However, when Carter was only able to work partial days due to her disabling condition, Dare failed and refused to compensate her for the entire day worked, choosing to pay her on a pro rata, hourly basis.

43. Upon information and belief, Dare's proposed return to work plans for Carter were intended to prohibit her from being physically able to work for a full day. It is further believed that the plans were designed for the purpose of withholding portions of Carter's earned salary.

44. During her employment with Dare, Carter's salary was only reduced for the time she was unable to work and never increased for those days when she worked extended hours.

### FIRST CAUSE OF ACTION
### (Violation of the Americans with Disabilities Act of 1990)

45. Plaintiff hereby incorporates paragraphs 1 - 44 as if fully set forth herein and further alleges:

46. At all times relevant to this action, Plaintiff was an "employee" covered by the protections of the ADA.

47. At all relevant times to the matters set forth hereinabove, Defendant employed at least fifteen (15) employees and is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

48. Title I of the ADA prohibits discrimination against a qualified individual with a disability in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a), *et seq.*

49. After becoming infected with the Covid-19 virus, Dare perceived Carter to have a disabling condition that affected her ability to work normal office hours.

50. Defendant's conduct as described hereinabove constitutes discrimination on the basis of Carter's disability in violation of the ADA. Such acts of discrimination include, but are not limited to the following:

   a. Failure and refusal to provide reasonable accommodations;

   b. Mandating when Plaintiff could take breaks;

   c. Refusal to consider the advice of Plaintiff's medical doctors;

   d. Failing and refusing to pay Plaintiff her earned salary for working partial days; and

   e. Refusing to allow Plaintiff to work from home as needed.

51. As a result of this conduct, Dare has violated the ADA and caused Carter to lose wages and job benefits as well as emotional and other harm.

## SECOND CAUSE OF ACTION
### (Violation of the Family Medical Leave Act)

52. Plaintiff hereby incorporates paragraphs 1 - 51 as if fully set forth herein and further alleges:

53. Carter was an eligible employee under the FMLA and had a serious medical condition as defined by the FMLA and implementing regulations.

54. Upon information and belief, at all relevant times, Defendant employed no less than fifty (50) employees within a seventy-five (75) mile radius of the facility where Carter worked in Cabarrus County, North Carolina.

55. Dare never notified or informed Carter of her right to take FMLA leave.

56. Dare was on notice of Carter's serious health condition and was on notice of Carter's need for FMLA leave.

57. Dare denied Carter's request for FMLA leave.

58. As a result of Dare's conduct, Carter was denied the benefits and protections provided under the FMLA and has suffered damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
**(Violation of Families First Coronavirus Response Act ("FFRCA") and Emergency Paid Sick Leave Act ("EMPSLA"))**

59. Plaintiff hereby incorporates paragraphs 1 - 57 as if fully set forth herein and further alleges:

60. During all times relevant to the matters set forth hereinabove, Dare employed less than 500 employees.

61. As such, Defendant is an "employer" within the meaning of the Families First Coronavirus Response Act ("FFCRA") and the Emergency Paid Sick Leave Act ("EPSLA").

62. Carter was advised by her healthcare providers to self-quarantine in April and July of 2020.

63. The nature and duties of Carter's job would have allowed her to complete a significant portion of her work from home as she was able.

64. Dare would not allow Carter to work exclusively from home when her condition prohibited her from returning to the office.

65. Dare would not allow Carter to work partial days from home when her condition prohibited her from returning to the office.

66. Dare would not allow Carter to take breaks during the day based on her condition and medical needs.

67. Dare failed and refused to provide reasonable accommodations that would allow Carter to return to work and ultimately forced her to resign.

68. Based on Dare's actions as set forth hereinabove, Carter has suffered damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (Violation of the Fair Labor Standards Act)

69. Plaintiff hereby incorporates paragraphs 1 - 68 as if fully set forth herein and further alleges:

70. The FLSA requires that qualified employers pay no less than the set minimum wage to employees. The FLSA further provides for the exemption of certain employees based on several criteria such as position and salary.

71. At all times relevant to the matters set forth hereinabove, Carter was employed by Dare as a salaried and exempt employee.

72. As a salaried and exempt employee, Dare was required to pay Carter her full salary each month.

73. As a salaried and exempt employee, Dare was not permitted to calculate Carter's pay based on the number of hours she worked in any given day.

74. Dare knowingly and intentionally reduced Carter's pay when she did not and/or could not work for eight hours in a single day.

75. Dare has willfully and wantonly refused to pay compensation due to Carter as required by law.

76. Accordingly, due to Dare's conduct, Carter has suffered damages in an amount to be determined at trial and for liquidated damages as allowed under the law.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays the Court for the following relief:

1. A trial by jury on all issues;

2. Entry of judgment against Defendant for an award of compensatory damages in an amount to be proven at trial;

3. Entry of judgment against Defendant for an award of liquidated damages under the FLSA;

4. Entry of judgment against Defendant for an award of punitive damages under the ADA for any wilful or wanton conduct that may be proven at trial;

5. Entry of judgment against Defendant for an award of attorney fees as allowed by statute;

6. That any judgment accrue post-judgment interest at the legal rate;

7. The costs of this action be taxed against Defendant; and

8. Any such other and further relief as this Court may deem just and proper.

Respectfully submitted this 2nd day of August 2022.

**GARELLA LAW, P.C.**

*/s/ C. Kiel Garella*
C. Kiel Garella
NC State Bar No. 42839
409 East Boulevard
Charlotte, North Carolina 28203
Tel: (980) 321-7934
Fax: (704) 990-6734
Kiel@GLjustice.com

*Attorney for the Plaintiff*

# CERTIFICATE OF SERVICE

I certify that on August 2, 2022, I served a true and accurate copy of the foregoing AMENDED COMPLAINT on all parties by mailing a copy thereof via Federal Express Standard Overnight, Return Receipt Requested and addressed as follows:

Attn: Dare Foods Incorporated
CT Corporation System
160 Mine Lake Court, Ste. 200
Raleigh, NC 27615

*/s/ C. Kiel Garella*
C. Kiel Garella
Garella Law, P.C.
*Counsel for the Plaintiff*